IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1233

 Filed: 16 July 2019

Onslow County, No. 16 CRS 54678

STATE OF NORTH CAROLINA

 v.

ADAM RICHARD CAREY

 Appeal by defendant from judgment entered 18 May 2018 by Judge Leonard

L. Wiggins in Onslow County Superior Court. Heard in the Court of Appeals 5 June

2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General E. Burke
 Haywood, for the State.

 Guy J. Loranger, for defendant-appellant.

 TYSON, Judge.

 Adam Richard Cary (“Defendant”) appeals from judgments entered upon a

jury’s verdict finding him guilty of one count each of possession of a weapon of mass

death and destruction and impersonation of a law enforcement officer. We find no

error in Defendant’s conviction for impersonation of a law enforcement officer, reverse

his conviction for possession of a weapon of mass death and destruction, and remand

for resentencing.

 I. Background
 STATE V. CAREY

 Opinion of the Court

 Defendant was operating a dark-colored Dodge Charger and pulled over a

speeding vehicle on 16 July 2016. Defendant had “emergency lights” flashing on his

car. State Highway Patrol Trooper Cross pulled behind Defendant’s vehicle and

noticed the registration plate was not consistent with or issued to a law enforcement

agency. After further investigation, Defendant was arrested, and his car was

searched incident to arrest. Officers found a medical technician badge, firearms,

magazines, ammunition, suppressors, three diversionary flash bang grenades, and

other items located inside of Defendant’s car. Defendant was indicted on three counts

of possession of weapons of mass destruction, impersonating a law enforcement

officer, following too closely, and speeding.

 On 15 May 2018, the State dismissed two counts of possession of firearms as

weapons of mass death and destruction, following too closely, and speeding. After

trial on 18 May 2018, a jury returned verdicts finding Defendant guilty of one count

of possession of a weapon of mass death and destruction and impersonation of a law

enforcement officer. For the conviction of possession of a weapon of mass death and

destruction charge, the court ordered Defendant to serve a term of 16 to 29 months.

The court suspended the sentence and imposed intermediate punishment, ordering

Defendant to serve an active term of 120 days and placing him on supervised

probation for a period of 24 months. For the conviction on the charge of

impersonating a law enforcement officer, the court ordered Defendant serve a term

 -2-
 STATE V. CAREY

 Opinion of the Court

of 45 days. The court suspended the sentence and imposed community punishment,

placing Defendant on supervised probation for a period of 24 months. Defendant gave

oral notice of appeal in open court.

 II. Jurisdiction

 Jurisdiction lies in this Court from a final judgment of the superior court

entered upon the jury’s verdict pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-

1444(a) (2017).

 III. Issues

 Defendant argues the trial court erred by denying his motion to dismiss the

weapon of mass death and destruction charge. Defendant also contends the trial

court committed plain error by: (1) failing to instruct the jury on the definition of

“weapon of mass death and destruction;” and (2) instructing the jury that it could find

that the State satisfied the “weapon of mass death and destruction” element when

the indictment did not allege that theory of guilt.

 IV. Impersonation of a Law Enforcement Officer

 Defendant appealed all of his convictions, including impersonating a law

enforcement officer. On appeal, Defendant raises no arguments to challenge or show

error in this conviction. Defendant’s failure to bring forth arguments and authority

results in abandonment of his appeal of this conviction. N.C. R. App. P. 28(a). We

find no error in Defendant’s conviction of impersonating a law enforcement officer.

 -3-
 STATE V. CAREY

 Opinion of the Court

 V. Standard of Review

 This Court reviews questions of statutory construction de novo. In re Ivey, __

N.C. App. __, __, 810 S.E.2d 740, 744 (2018) (citation omitted).

 VI. Motion to Dismiss

 Defendant contends the trial court erred by denying his motion to dismiss the

possession of a weapon of mass death and destruction charge for insufficient evidence.

He argues possession of flash bang grenades falls outside of the category of “Grenade”

listed as a “weapon of mass death and destruction” set forth in N.C. Gen. Stat. § 14-

288.8(c). We agree and reverse Defendant’s conviction of possession of a weapon of

mass death and destruction.

 A. “Weapon of Mass Death and Destruction”

 Defendant was charged with one count of possession of a weapon of mass death

and destruction under N.C. Gen. Stat. 14-288.8(c). We must consider the provisions

and language contained within the statute in order to determine whether or not a

flash bang device would qualify as a weapon of mass death and destruction. While a

“grenade” may qualify as a “weapon” under State v. Sherrod, a flash bang grenade is

neither a deadly weapon nor a weapon of mass death and destruction. State v.

Sherrod, 191 N.C. App. 776, 781, 663 S.E.2d 470, 474 (2008) (defining weapon as “an

instrument of attack or defense in combat, . . . or an instrument of offensive or

defensive combat[;] something to fight with[;] something (as a club, sword, gun, or

 -4-
 STATE V. CAREY

 Opinion of the Court

grenade) used in destroying, defeating, or physically injuring an enemy” (citation

omitted)). Viewing the statute holistically and narrowly, the flash bang grenades

found in Defendant’s car do not fit within the definition of a weapon of mass death

and destruction in N.C. Gen. Stat. § 14-288.8(c).

 B. Ejusdem Generis

 When appellate courts review and construe the meanings of words and phrases

the General Assembly listed within a statute, the legislative intent is presumed to

pair and restrict the meaning and application of broad and generic words to the

specific context or stated purpose of the statute.

 “[T]he ejusdem generis rule is that where general words
 follow a designation of particular subjects or things, the
 meaning of the general words will ordinarily be presumed
 to be, and construed as, restricted by the particular
 designations and as including only things of the same kind,
 character and nature as those specifically enumerated.”

State v. Fenner, 263 N.C. 694, 697-98, 140 S.E.2d 349, 352 (1965). This principle

“does not warrant the court subverting or defeating the legislative will.” Id. at 698,

140 S.E.2d at 352.

 Following this canon of statutory construction, possession of a “flash bang

grenade,” even though called a “grenade,” does not fit the definition nor qualify as the

type of “Grenade” that is enumerated in N.C. Gen. Stat. § 14-288.8(c)(1) as a weapon

of mass death and destruction. The other items included in the list, such as a “Bomb,”

“Rocket having a propellant charge of more than four ounces,” “Missile having an

 -5-
 STATE V. CAREY

 Opinion of the Court

explosive or incendiary charge of more than one-quarter ounce,” and “Mine,” comprise

a set of highly deadly and destructive fragmentary and incendiary explosives capable

of causing mass deaths and destruction. They are dissimilar to and unlike the flash

bang “grenades” found inside of Defendant’s car.

 The admitted evidence, viewed in the light most favorable to the State, shows

flash bang grenades do not fall within the category of restricted items capable of

producing mass death and destruction as are regulated under the statute. Id. Trooper

Cross testified that to deploy a flash bang grenade, the user would “[h]old the long

lever, the spoon, pull the pin out . . . you would roll it into a room . . . and it would

make a bright flash and a very loud bang for the purpose of rendering the people—or

whoever is in that room—stunned, disabled, disoriented[.]”

 This testimony of the effects of “a bright flash and a very loud bang” upon use

is wholly inconsistent with the types and categories of egregious devices and weapons

of mass death and destruction regulated or prohibited under N.C. Gen. Stat. § 14-

288.8(c)(1). The statute regulating weapons of mass death and destruction prohibits

the unlicensed or unauthorized possession of a class of weapons of munitions of war

that are capable of and can result in widespread and catastrophic deaths and

destruction of property. The State produced no evidence that the items recovered

from Defendant’s vehicle were intended to be included within this statute or capable

of rendering those results.

 -6-
 STATE V. CAREY

 Opinion of the Court

 “[T]he ejusdem generis rule is that where general words follow a designation of

particular subjects or things, the meaning of the general words will ordinarily be

presumed to be, and construed as, restricted by the particular designations and as

including only things of the same kind, character and nature as those specifically

enumerated.” State v. Lee, 277 N.C. 242, 244, 176 S.E.2d 772, 774 (1970). A flash

bang grenade is not classified or defined even as a deadly weapon to individuals or

multiple persons, as with a knife, gun, pistol, rifle, or shotgun, and does not fit into

the greater and more restricted category of weapons of mass death or destruction.

 To be defined and included as a weapon of mass death or destruction, the item

must be capable of causing catastrophic damage and consistent with the highly

deadly and destructive nature of the other enumerated items in the list contained in

N.C. Gen. Stat. § 14-288.8(c). Id. The flash bang grenades found inside of Defendant’s

vehicle are not consistent with the purpose, do not fit within, and do not rise to the

potential impacts of enumerated general items within the list as constrained by the

intent and purpose of the statute. Id. The State’s argument is overruled.

 C. Exclusions from the Statute

 N.C. Gen. Stat. § 14-288.8(c) contains the express provision that the “term

‘weapon of mass death and destruction’ does not include any device which is neither

designed nor redesigned for use as a weapon.” Defendant specifically requested a

 -7-
 STATE V. CAREY

 Opinion of the Court

jury instruction on this exception under N.C. Gen. Stat. § 14-288.8(c), which the trial

court denied.

 When describing how he had used flash bang grenades while serving on active

military duty in Iraq, Trooper Cross stated that “we could surprise, stun and get the

upper hand so we could do what we had to do quickly.” Flash bang grenades were

not used as a weapon of mass death or destruction, but were deployed for surprise,

disorientation, and diversionary purposes, uses clearly outside of the purpose, scope,

and prohibitions of the statute.

 It is overly simplistic and erroneous to classify a flash bang with “a bright flash

and a very loud bang” or a smoke grenade emitting fog as a “Grenade” as a weapon

of mass death and destruction. This inclusion would equate to classifying a cherry

bomb as a “Bomb” or a bottle rocket as a “Rocket” capable of causing mass deaths.

See Sherrod, 191 N.C. App. at 781, 663 S.E.2d at 474. No admitted evidence shows

these flash bang devices are capable of being used as a weapon to cause mass deaths

or widespread destruction.

 D. Rule of Lenity

 The rule of lenity may apply if there is ambiguity within the statute. The trial

court’s preemptive interpretation of N.C. Gen. Stat. § 14-288.8(c)(1) is overly broad.

The rule of lenity requires courts to read criminal statues narrowly and restrictively.

As here, the statute’s general and undefined terms could include possession of items

 -8-
 STATE V. CAREY

 Opinion of the Court

within its provisions, which are neither dangerous nor deadly weapons, and yet be

included and sanctioned as a weapon of mass death and destruction.

 Because of the broad, general terms included, the ambiguity in what items are

included within the proscribed list in N.C. Gen. Stat. § 14-288.8(c)(1) compels the rule

of lenity to be applicable here. See State v. Heavner, 227 N.C. App. 139, 144, 741

S.E.2d 897, 901 (2013); State v. Crawford, 167 N.C. App. 777, 780, 606 S.E.2d 375,

378 (2005) (“The rule of lenity applies only when the applicable criminal statute is

ambiguous.”).

 The rule of lenity “forbids a court to interpret a statute so as to increase the

penalty that it places on an individual when the Legislature has not clearly stated

such an intention.” State v. Wiggins, 210 N.C. App. 128, 133, 707 S.E.2d 664, 669,

cert. denied, 365 N.C. 189, 707 S.E.2d 242 (2011) (quotation omitted). “[W]hen

applicable, the rule of lenity requires that ambiguity concerning the ambit of criminal

statutes should be resolved in favor of lenity.” Heavner, 227 N.C. App. at 144, 741

S.E.2d at 901-02 (quotation and citation omitted).

 Based upon the application of the rule of lenity to the intent and types of

weapons proscribed by the statute, Defendant’s motion to dismiss the charge of

possession of a weapon of mass death and destruction should have been granted. The

flash bang grenades found in Defendant’s car were not devices or weapons or

 -9-
 STATE V. CAREY

 Opinion of the Court

“Grenades” capable of causing mass death and destruction when construing N.C.

Gen. Stat. § 14-288.8(c)(1) narrowly under the rule of lenity. Id.

 VII. Plain Error in the Jury Instructions

 Defendant also asserts the trial court committed plain error both by failing to

instruct the jury on the definition of weapon of mass death or destruction and by

preemptively instructing the jury that the State had satisfied the possession of a

weapon of mass death and destruction element, if it found that Mr. Carey had

possessed a “grenade” where the indictment did not allege that theory of guilt. Since

we reverse Defendant’s conviction for possession of a weapon of mass death and

destruction because the trial court should have granted Defendant’s motion to

dismiss for the reasons analyzed above, we do not address Defendant’s arguments

challenging the jury instructions regarding these issues.

 VIII. Conclusion

 Defendant’s failure to bring forth arguments and authority results in

abandonment of the appeal of his conviction for impersonating a law enforcement

officer. N. C. R. App. P. Rule 28(a). We find no error in that conviction.

 The trial court erred by failing to grant Defendant’s motion to dismiss. The

flash bang grenades found in the back of Defendant’s vehicle do not satisfy the

requirements for possession of a “Grenade” that is a “weapon of mass death and

destruction” as is set out by N.C. Gen. Stat. § 14-288.8(c). These items are not “of the

 - 10 -
 STATE V. CAREY

 Opinion of the Court

same kind, character and nature as those [weapons] specifically enumerated by the

statute.” Fenner at 697-98, 140 S.E.2d at 352.

 The trial court increased the potential penalty on Defendant by construing the

scope of the statute’s undefined and general words ambiguously, beyond the General

Assembly’s intention, and inconsistent with the well-established canons of statutory

construction. See Wiggins, 210 N.C. App. at 133, 707 S.E.2d at 669.

 The State failed to present sufficient evidence under N.C. Gen. Stat. 14-

288.8(c) to support a conclusion or verdict that possession of the flash bang grenades

found in Defendant’s car were a “Grenade” proscribed as a weapon of mass death and

destruction. Defendant’s motion to dismiss is properly allowed.

 We reverse the trial court’s decision and remand for resentencing. This

decision does not prevent nor prohibit the possession or use of flash bang grenades

from being otherwise restricted or regulated by law. It is so ordered.

 NO ERROR IN PART; REVERSED IN PART; AND REMANDED.

 Judge MURPHY concurs.

 Judge YOUNG concurs in part and dissents in part with separate opinion.

 - 11 -
 No. COA 18-1233 – State v. Carey

 YOUNG, Judge, dissenting in part and concurring in part.

 I. Introduction

 The majority has held that flash bang grenades are not weapons of mass death

and destruction under N.C. Gen. Stat. § 14-288.8(c) (2017). Accordingly, the majority

held that the trial court erred by denying Defendant’s motion to dismiss the charge

of possession of a weapon of mass death and destruction for insufficient evidence and

reversed the conviction. Because I disagree with the underlying principle, I must

respectfully dissent.

 The majority held that a “flash bang grenade,” even though called a “grenade,”

does not fit the definition nor qualify as the type of “Grenade” that is enumerated in

N.C. Gen. Stat. § 14-288.8(c)(1). Following the canons of statutory construction, the

plain language of the statute should control. State v. Jamison, 234 N.C. App. 231,

238, 758 S.E.2d 666, 671 (2014).

 The intent of the Legislature controls the interpretation of
 a statute. When a statute is unambiguous, the court will
 give effect to the plain meaning of the words without
 resorting to judicial construction. Courts must give an
 unambiguous statute its plain and definite meaning, and
 are without power to interpolate, or superimpose,
 provisions and limitations not contained therein.

Id. at 238, 758 S.E.2d at 671.

 II. Motion to Dismiss

 “[T]o obtain a conviction for possession of a weapon of mass death and

destruction, the State must prove two elements beyond a reasonable doubt: (1) that
 STATE V. CAREY

 YOUNG, J., dissenting

the weapon is a weapon of mass death and destruction and (2) that defendant

knowingly possessed the weapon.” State v. Billinger, 213 N.C. App. 249, 253, 714

S.E.2d 201, 205 (2011). Defendant only challenges element one. By statute, “the

term ‘weapon of mass death and destruction’ includes: Any explosive or incendiary:

(a) Bomb; or (b) Grenade; or . . . (f) Device similar to any of the devices described

above.” N.C. Gen. Stat. § 14-288.8(c)(1).

 Defendant contends that the grenades in his possession are excluded from the

definition of weapons of mass death and destruction. However, the statute does not

support his argument.

 The term “weapon of mass death and destruction” does not
 include any device which is neither designed nor
 redesigned for use as a weapon; any device, although
 originally designed for use as a weapon, which is
 redesigned for use as a signaling, pyrotechnic, line-
 throwing, safety, or similar device; surplus ordnance sold,
 loaned, or given by the Secretary of the Army pursuant to
 the provisions of section 4684(2), 4685, or 4686 of Title 10
 of the United States; or any other device which the
 Secretary of the Treasury finds is not likely to be used as
 a weapon, is an antique, or is a rifle which the owner
 intends to use solely for sporting purposes, in accordance
 with Chapter 44 of Title 18 of the United States Code.

N.C. Gen. Stat. § 14-288.8(c).

 In Sherrod, this Court held “an instrument of attack or defense in combat, . . .

or an instrument of offensive or defensive combat[;] something to fight with[;]

something (as a club, sword, gun, or grenade) used in destroying, defeating, or

 2
 STATE V. CAREY

 YOUNG, J., dissenting

physically injuring an enemy” is a weapon. State v. Sherrod, 191 N.C. App. 776, 781,

663 S.E.2d 470, 474 (2008). In the present case, the weapon at issue is a grenade.

Diversionary grenades are military-issued ordnance which are used in combat.

Furthermore, in the present case, the words: “GRENADE, HAND, DIVERSIONARY”

and “IF FOUND DO NOT HANDLE NOTIFY POLICE OR MILITARY,” were printed

on the labels of the grenades found in Defendant’s vehicle. Trooper Christopher Cross,

who served in the military for sixteen years and used a flash bang grenade, testified

that flash bang grenades “have the ability to cause serious injury, such as loss of

limbs, burns, and things like that.”

 The flash bang grenade at issue was designed to be used in combat as a

weapon. Moreover, the flash bang grenade was not “redesigned for use as a signaling,

pyrotechnic, line-throwing, safety, or similar device.” Lastly, there is no evidence to

show that the flash bang grenade was “surplus ordnance sold, loaned, or given by the

Secretary of the Army,” nor was it an “antique” or used solely for “sporting purposes.”

As such, the flash bang grenade is not excluded from being a weapon of mass death

and destruction as enumerated in N.C. Gen. Stat. § 14-288.8(c).

 Pursuant to the plain language of the statute, a “flash bang grenade” is, by

law, a “grenade,” and therefore a weapon of mass death and destruction.

Furthermore, a “flash bang grenade” does not fall within an exclusion enumerated in

 3
 STATE V. CAREY

 YOUNG, J., dissenting

N.C. Gen. Stat. § 14-288.8(c). There was sufficient evidence to support a finding that

Defendant possessed a weapon of mass death and destruction.

 III. Failure to Provide Definition

 Defendant alleges the trial court committed plain error by failing to instruct

the jury on the definition of a “weapon of mass death or destruction” as provided in

N.C. Gen. Stat. § 14-288.8(c)(1). Although the majority declined to address this issue,

I believe it is properly before us. Defendant raised no objection at trial, and we

therefore review for plain error.

 Plain error arises when the error is “ ‘so basic, so prejudicial, so lacking in its

elements that justice cannot have been done[.]’ ” State v. Odom, 307 N.C. 655, 660,

300 S.E.2d 375, 378 (1983) (quoting United States v. McCaskill, 676 F.2d 995, 1002

(4th Cir. 1982), cert. denied, 459 U.S. 1018, 74 L. Ed. 2d. 513 (1982)). “Under the plain

error rule, defendant must convince this Court not only that there was error, but that

absent the error, the jury probably would have reached a different result.” State v.

Jordan, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

 As in Defendant’s first argument, this Court established in Sherrod that a

grenade is a weapon “used in destroying, defeating, or physically injuring an enemy.”

Sherodd, 191 N.C. App. at 781, 663 S.E.2d at 474. In addition, the applicable statute

defines a grenade as a “weapon of mass death and destruction,” so there was no need

for a definition to be provided. N.C. Gen. Stat. § 14-288.8(c)(1).

 4
 STATE V. CAREY

 YOUNG, J., dissenting

 Even if it were error for the trial court to decline to instruct the jury on the

definition of a “weapon of mass death or destruction,” it would not rise to the level of

prejudice to Defendant. The definition specifically includes grenades, and thus, the

jury would probably have reached the same result. Therefore, I would find no plain

error.

 IV. Element not in Indictment

 Defendant contends the trial court committed plain error by instructing the

jury that it could find that the State satisfied the “weapon of mass death or

destruction” element if it found that Defendant possessed a “grenade” where the

indictment did not allege that theory of guilt. As above, although the majority

declined to address this issue, I believe it is properly before us. Because this issue

was not preserved by objection at trial we review for plain error.

 The indictment alleged Defendant “did possess a weapon of mass death and

destruction, three flash bang grenades.” Defendant complained that the description

of the grenade was too specific. A flash bang grenade was presented at trial even

though it was only referred to as a “grenade.”

 In Bollinger, the defendant was indicted for carrying a concealed weapon. The

indictment stated that the defendant “unlawfully and willfully did carry a concealed

deadly weapon while off his premises, to wit: a Metallic set of Knuckles.” State v.

Bollinger, 192 N.C. App. 241, 243, 665 S.E.2d 136, 138 (2008) (emphasis in original).

 5
 STATE V. CAREY

 YOUNG, J., dissenting

The trial court instructed the jury that “it could find defendant guilty only upon a

finding that defendant ‘intentionally carried and concealed about his person one or

more knives.” Id. at 244, 665 S.E.2d at 138 (emphasis in original). As in the instant

case, the defendant argued that there was a fatal variance between the offense

charged in the indictment and the evidence presented, and instructions given, at trial.

This Court held that “an indictment is sufficient if it charges the substance of the

offense, puts the defendant on notice of the crime, and alleges all essential elements

of the crime.” Id. at 246, 665 S.E.2d at 139. In Bollinger, the additional language,

“to wit: a Metallic set of Knuckles” was deemed “mere surplusage and not an essential

element of the crime of carrying a concealed weapon.” Id. at 246, 665 S.E.2d at 139-

140.

 Similarly, in this case, it was unnecessary to say, “three flash bang grenades”

instead of “grenades.” It is clear that the offense is possession of a weapon of mass

death and destruction. As a result, the indictment did allege that theory of guilt.

However, even if it did not, the jury would probably not have reached a different

result in the absence of this instruction, and therefore, I would find no plain error.

 V. Impersonating a Law Enforcement Officer

 I agree with the majority that Defendant’s failure to bring forth arguments and

authority results in abandonment of his appeal of this conviction. N.C.R. App. P.

Rule 28(a).

 6
 STATE V. CAREY

 YOUNG, J., dissenting

 VI. Conclusion

 With regard to impersonating a law enforcement officer, I concur with the

majority that Defendant’s argument is abandoned on appeal. However, with regard

to the weapon of mass death and destruction, I respectfully dissent, and this Court

should uphold the lower court’s decision.

 7